IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MOLLY B. SWANK,                          :
               Plaintiff        :
                             : Case No. 3:06-cv-83-KAP
JOANNE B. BARNHART, COMMISSIONER :
OF SOCIAL SECURITY,                      :
               Defendant        :

## MEMORANDUM

Molly Swank appeals from the decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C.§§ 1381-83f.  An ALJ found, on September 6, 2005, that Swank was not disabled up to and including that date.  Tr. 13-22.  The Appeals Council denied review on February 15, 2006, Tr. 6-8, thus making the ALJ's findings the basis for the Commissioner's decision.

Because substantial evidence does not support the ALJ's findings on which she based her conclusion that Swank was not disabled, and because the record does not support a conclusion that Swank is disabled, both the defendant's motion for summary judgment, docket no. 16, and the plaintiff's motion for summary judgment, docket no. 14, are denied.  The Commissioner's decision is vacated, and the matter is remanded to the Commissioner for further proceedings.

Swank applied for benefits in April 2004, alleging that she had been disabled since April 1992, chiefly because she suffered reflex sympathetic dystrophy after injuring muscles in her back and shoulder while working as a housekeeper in a motel.  The reason for

the delayed application appears two-fold: 1) shortly before her application, Swank had become divorced and began living alone, and 2) Swank had received workers compensation for about twelve years after this injury, but at the time of her application she was no longer receiving benefits. The record is not clear whether the cessation of benefits was due to a commutation petition by the employer or an adjudication that Swank's disability had ended.

After a hearing on August 9, 2005, an ALJ found Swank not disabled on September 6, 2005. The court's duty in reviewing a denial of SSI is to determine whether "substantial evidence," 42 U.S.C.§ 1383(c)(3), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971), supports the ALJ's finding that Swank is not disabled. See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999); Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir.1999). The definition of disability, both for purposes of disability benefits and SSI, requires an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C.§§ 423(d)(1)(A), 1382c(a)(3)(A). See Barnhart v. Walton, 535 U.S. 212, 218 (2002)(both the impairment **and** the resulting inability to work must last at least twelve months.)

2

My responsibility is to examine the whole record, not simply to confirm the existence of those pieces of evidence relied upon by the ALJ, see Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir.2003)(citation omitted), and I have therefore read the entire record, whether cited by counsel or not. However, even in cases where my reading of the record would convince me to decide issues differently if my review were de novo, the substantial evidence standard of review does not permit me to substitute my judgment for that of the ALJ. See Schaudeck v. Commissioner, 181 F.3d 429, 431 (3d Cir.1999).

The ALJ used the five-step disability analysis set forth at 20 C.F.R.§§ 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The first four steps are not in dispute: (1) Swank did not work after her alleged onset date in April 1992; and (2) she has severe impairments, described by the ALJ as reflex sympathetic dystrophy of her left arm, plantar fascitis of her right foot, depression and anxiety, as well as non-severe impairments of high blood pressure, degenerative disc disease, and gastroesophageal reflux disorder. Tr. 15-16; but (3) her impairments, alone or in combination, do not meet the requirements of the disability listings at 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically Listing 1.00 (musculoskeletal disorders) or Listing 12.00 (affective disorders, including depression and anxiety). At the fourth step,

3

the ALJ found that Swank had no relevant past work history, and a
fortiori could not return to her past work.

At the fifth and final step, the ALJ found that Swank
retains the residual functional capacity to do the work necessary in
several simple, routine, light exertion (lifting and carrying no
more than 20 pounds) jobs that require limited interaction with co-
workers and the public or frequent changes in the workplace. Based
on this finding, the ALJ asked a vocational expert whether there
were jobs which exist in the national economy that a hypothetical
person with Swank's education and those limitations could perform.
The vocational expert testified that there were hundreds of
thousands of positions existing in four typical jobs meeting those
requirements: kitchen helper, laundry sorter, print shop packer, and
equipment cleaner. Tr. 451-53. The ALJ accordingly concluded that
Swank was not disabled. See Plummer v. Apfel, supra, 186 F.3d at
428 (at step five, the burden of production shifts to the
Commissioner to show existence of work for claimant in the national
economy.)

Swank's appeal hinges on whether the ALJ's hypothetical to
the vocational expert adequately contained all of the functional
limitations caused by Swank's impairments. See Ramirez v. Barnhart,
372 F.3d 546, 552 (3d Cir.2004); Chrupcala v. Heckler, 829 F.2d
1269, 1276 (3d Cir.1987). There are two parts to the inquiry:
first, the hypothetical posed to the vocational expert must contain

4

all the limitations the ALJ does find; second, substantial evidence must support the choice of the ALJ to reject limitations the ALJ does not include in the hypothetical. <u>Ramirez</u> illustrates the first requirement: there, the ALJ's hypothetical limitation of an individual to "simple one or two step tasks" did not adequately capture the limitations caused by the finding made by the ALJ that the claimant "often" had deficiencies in concentration, persistence, and pace.   372 F.3d 552-53.   The ALJ's hypothetical did not run afoul of <u>Ramirez</u>.

In <u>Chrupcala</u>, the ALJ posed a formally valid hypothetical question, but erred in formulating the hypothetical question by rejecting without substantial evidence the claimant's nonexertional limitation of constant and severe pain.  829 F.2d at 1276.  Applying the ALJ's hypothetical to Swank makes the same error.

The ALJ found that Swank had some limitations on her activities of daily living, in her social functioning with co-workers and the public, and in her concentration, persistence, and pace, but that these limitations were not inconsistent with the ability to perform simple unskilled work.  The ALJ had substantial evidence to reject the more extensive limitations Swank contended she has, because the Social Security Act makes the claimant's residual functional capacity, not her ailments, the dispositive element in determining disability. Diagnoses of medical conditions, even serious ones, which are not accompanied by disabling impairment

of functional capacity, cannot support a claim of disability. Petition of Sullivan, 904 F.2d 826, 844-45 (3d Cir.1990)(alcoholism); see also 20 C.F.R. §404.1530(b). Here, the ALJ had substantial evidence to support her conclusion that Swank's extensive testimony about her foot and arm pain, depression, anxiety, sleep disorders, and depression was not completely credible, namely: 1) the lack of evidence of treatment for Swank's conditions (other than RSD) that would indicate that the conditions were either severe or chronic; 2) the lack of evidence of any physical or psychological deterioration from the alleged onset date in 1992 until the present; 3) Swank's secondary motivations for claiming disability in 2004, given her lack of attempt to find any work since 1992, her divorce, and the cessation of workers compensation.

However, and this is the dispositive point, the ALJ had no substantial evidence to suppose that Swank's RSD in her left arm was not a genuine chronic impairment. The ALJ asked the vocational expert whether any of the light duty jobs offered could be done by a person limited to use of one hand, and found they could not. Tr. at 453. The ALJ then found that there were many sedentary jobs that could be performed without bilateral manual dexterity, Tr. 454-55. But because of Swank's limited education (10th grade with a GED, Tr. 439-40) and lack of relevant work experience or skills and because at the time of the ALJ's decision she was a "person closely

approaching advanced age," see 20 C.F.R.§ 416.963, if Swank were limited to sedentary jobs she would be found disabled pursuant to Commissioner's presumptive guidelines, that is, "the Grids", 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.18 (not disabled at 49) and 201.09 (disabled at 50)[1].

The ALJ, in her findings, found Swank able to perform light exertional work without any limitation on use of her left arm caused by RSD, based on exactly two pieces of evidence: a statement by Swank's current treating physician, Doctor VanAntwerp, in "November 2003" that found Swank had "no evidence of significant atrophy" of the left arm, and a Somerset Hospital emergency room record of October 2004 which found that Swank had "equal grip strength bilaterally." See Tr. 18, citing Exhibit 11F and Exhibit 10F, respectively.

No doctor who actually saw Swank ever stated that she did not suffer from RSD in her left arm or that it did not affect her ability to use the left arm. The ALJ almost entirely discounted the opinion of Dr. William Acosta (a former treating physician) that

---

1. Light work requires occasional lifting objects up to 20 pounds, with frequent lifting or carrying of objects up to 10 pounds, **or** requires lifting less weight but involves a "good deal" of walking or standing or sitting and operating arm or leg controls; sedentary work requires the occasional lifting of objects up to 10 pounds and involves mostly sitting, with only occasional walking or standing. 20 C.F.R.§ 404.1567. There were no questions to the vocational expert about whether the jobs he had chosen were classified as light work because of lifting requirements or because they involve a good deal of walking.

Swank was disabled, summarizing Acosta's factual findings as part of the anonymous "[p]rogress notes from treating and consulting examiners" which "show the claimant experiences chronic left upper extremity pain with decreased strength/sensation of the left hand." Tr. 18, and explaining that Dr. Acosta's opinion was not entitled to more deference because he had used a thermogram (a diagnostic tool not sanctioned by the AMA) without noting that Acosta testified that his diagnosis was corroborated by, not based on, the thermogram results. Tr. 20. After this paring down of Acosta's significance, the ALJ then placed Acosta's opinion in the scales and found it overmatched by the opinions of records-reviewing consultants (plural, not singular), see Tr. 21, citing "Exhibits 6F, 7F, 8F." Two of the exhibits of the consultants thus cited were the reports of Larry Smith, Ph.D., a psychologist who did not address Swank's physical symptoms. The third exhibit is an opinion of Swank's physical capacities, signed by someone whose last name is Booth and who is described only in the index as a "DDS physician," Tr. 4. Booth finds that Swank has an unlimited ability to use both arms to push, pull, and operate hand controls, and that, at age 50, 5' or 5'1" tall, and at various times weighing from 160 to 185 pounds, Swank can perform jobs requiring her to occasionally climb ropes and ladders, and to work at heights around moving machinery. See Tr. 318, 320.

8

But even passing over the nip and tuck way Acosta's findings and opinions are discounted and ultimately ignored, the ALJ relied improperly on the evidence she does cite.  First, the date of VanAntwerp's office note (and it is worth observing that the ALJ transmuted this internal office note into a weightier report, as in "Dr. VanAntwerp reported," <u>see</u> Tr. 18) is November 2004, not 2003, <u>see</u> Tr. 347 - there are no notes from August 2003 to January 2004, <u>see</u> Tr. 326.  Second, although VanAntwerp's note does state "no significant atrophy," that is at the end of a sentence that notes "decreased movement in the left extremity," right after a sentence describing changes in the thenar eminence of the right hand which VanAntwerp thought was "just secondary to chronic use of the right hand because of her left reflex sympathetic dystrophy." VanAntwerp's notes indicate that although he is unwilling to commit to diagnoses made by other doctors without himself seeing the evidence, he did not doubt Swank's RSD.  See <u>e.g.</u> Tr. 325, office notes of September 16, 2004.

As for the emergency room record of October 2004, Swank was in the Somerset Hospital emergency room several times in 2003 and 2004 with minor or undetectable medical troubles.  <u>See</u>  Tr. 231 (January 7, 2003: itching in the left eye); Tr. 227 (April 11, 2003: dizziness); Tr. 219 (December 5, 2003: dizziness); Tr. 282 (January 23, 2004: tingling of the fingers); Tr. 275 (May 10, 2004: pain in the epigastrum); Tr. 265 and 269 (June 1, 2004: "not feeling right,"

9

abdominal pain); Tr. 338 (September 30, 2004: nausea); Tr. 334 (October 1, 2004: headache); Tr. 331 (December 23, 2004: vomiting, diarrhea). As my thumbnail descriptions indicate, at various times Swank appeared with diarrhea, chest pains or headaches. The emergency room records show that Swank was treated appropriately for the symptoms she described. On October 1, 2004, just after appearing the previous day with a complaint of nausea, Swank appeared with a complaint of severe headaches. The ER record shows that the attending personnel, though obviously familiar with Swank's many visits, were appropriately concerned about the possibility of a stroke or TIA, and someone in the ER, no doubt testing for hemiparesis by asking Swank to grip both of their hands and squeeze, reported that Swank's "grip strengths are equal bilaterally." Tr. 335. This statement, reflecting appropriate ER treatment considering Swank's reported symptoms, is hardly a basis for the ALJ's use of it as a blanket assessment that Swank had full bilateral dexterity, much less as a sufficient prop to reject a decade of medical records opining that Swank has RSD affecting the use of her left arm.

Even under the Commissioner's version of the record, Swank is disabled as of age 55. See Rules 202.01 and 202.04. Swank may not be disabled now, but the overwhelming impression is that the ALJ, not having any testimony about light work jobs that can be done with use of one hand, cherrypicked through the record to find Swank

10

able to do the light work jobs identified by the vocational expert, without any meaningful consideration of Swank's RSD.   The Commissioner's decision cannot be supported by the record, and the legal corollary to the deferential standard of review of the administrative agency's decision is that, unlike an appellate court reviewing a lower court, I do not conduct an independent analysis of the medical records to see if the ALJ reached a correct result by an erroneous route.   See SEC v. Chenery Corporation, 318 U.S. 80, 87 (1943)("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")   The Commissioner's decision must be vacated.

DATE: _December 22 2006_                    _____
                                            Keith A. Pesto,
                                            United States Magistrate Judge

Notice by ECf to counsel of record

11